# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| REBECCA MAHAR | § | |
| | § | |
| VS. | § | NO. A-14-CV-582 LY |
| | § | |
| GC SERVICES, L.P. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Rebecca Mahar's Motion for Attorney's Fees and Costs (Dkt. No. 7). Judge Yeakel referred the above motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.[1]

### I. Background

This is a suit brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and the parallel state statute, the Texas Debt Collection Act. Suit was filed on June 2, 2014, alleging that the defendant, GC Services, L.P., violated both statutes in attempting to collect an alleged student loan debt owed by plaintiff, Rebecca Mahar. The complaint alleges that GC Services "placed repeated and continuous telephone calls to Plaintiff's cellular and work telephone numbers," on average two times a day for two months. Dkt. No. 1 at ¶¶ 12-14. Mahar further alleges that GC

---

[1]The order of referral states that the motion is referred for "disposition or report and recommendation as appropriate." Dkt. No. 8. Pursuant to FED. R. CIV. P. 54, a court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Absent consent of the parties, dispositive matters may be referred only for report and recommendation. 28 U.S.C. § 636(b). Accordingly, the Court issues its findings in the form of a report and recommendation.

Services called and spoke to her employer, disclosed the alleged debt, attempted to find out what her salary was, and indicated that it intended to garnish Mahar's wages. *Id.* at ¶¶16-17.

On August 14, 2014, GC Services tendered a Rule 68 offer of judgment to Mahar, offering to allow a judgment to be entered against it in the amount of $1,000, "plus an additional amount for the Plaintiff's costs and Plaintiff's reasonable attorney's fees." Dkt. No. 6-1. The offer further stated that in the event the parties were unable to agree on the reasonable fees and costs, they would be "determined by the Court via Motion." *Id.* On August 28, 2014, Mahar filed her Notice of Acceptance of the Offer of Judgment. Dkt. No. 6. Because the parties were unable to agree on an award of fees and costs, Mahar subsequently filed the instant motion. She requests that she be awarded $2,100 in attorney's fees, and $400 in costs. GC Services contends that Mahar should only be permitted to recover $750 in fees. It agrees that the $400 filing fee, which comprises all of the requested costs, is appropriately awarded to Mahar.[2]

## II. Analysis

As noted, Mahar has requested $2,100 in attorney's fees. In support of this amount, her counsel has submitted her affidavit, along with the affidavit of all of the other attorneys in the office who worked on the file, each of whom swear that their entries accurately reflect the work they actually did on the case. Though GC Services states that it "is candidly dubious of the suggestion that four attorneys actually worked on the matter," it offers no countering affidavit or evidence to dispute any of this. Given the nature of the plaintiff's firm's practice, the use of four attorneys (most

---

[2]Given the size of the Austin federal docket, it is unfortunate that the parties were unable to agree on the fees issue, and instead are litigating over a little more than $1,000. Indeed, the briefing on the fees issue is more than twice as many pages as the entire rest of the file.

of whose time involvement was minimal) was reasonable. The lead counsel's affidavit further notes that the un-discounted total for attorney's fees was $3,221.50, but that based on her exercise of "billing judgment"—by which she eliminated or reduced duplicative time or inter-office attorney discussions, and reduced the hourly rates to reflect the rates of attorneys in Austin—she was requesting only $2,100 in fees. Dkt. No. 7-2 at 10.

GC Services objects to the fees on two primary bases. First, it spends the majority of its response attacking Mahar's lead counsel, accusing her of dishonesty because her initial request for fees and costs asked for $3,500, and yet the application to the Court only seeks $2,500. Though never explicitly stated, it appears that GC Services contends that the fees should be reduced even further below the $2,100 mark because of this alleged misconduct. Second, and more relevantly, GC Services contends that even the reduced time figures are unreasonable, as the majority of the work reflected was secretarial or clerical and could have been (and should have been) done by clerical staff or paralegals. The Court will address the last argument first.

As Mahar correctly points out, the Texas Disciplinary Rules of Professional Conduct require that an attorney, not a secretary, conduct legal work, and make attorneys responsible for the work non-lawyer assistants do. *See* Tex. Disciplinary R. Prof. Conduct Rules 1.03(a) & (b); 3.01; 3.03(a)(1); 4.01; 5.03(b); 5.05(b). Thus, the lead attorney needs to actually speak to the client, review and analyze the facts, and ensure that what is being filed is supported by the facts and existing law. The Court has reviewed the billing records and affidavits submitted on the motion, as well as the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and concludes that the $2,100 requested by Mahar plainly falls within the range of what is reasonable to litigate the case to the stage to which it was litigated. Further, to the extent that GC Services

3

contends that Mahar escalated the costs by not reaching an agreement on fees prior to filing the motion, the Court is not persuaded. As discussed below, GC Services took a confrontational posture from the outset, initially indicated that it would not negotiate, and never budged from its offer to pay only $750 in fees, even in its briefing here. From what is in the record, GC Services was at least as responsible for the lack of an agreement as Mahar's counsel.[3]

GC Services' other argument in its Response is less well-formed, though it covers more pages and permeates the entire brief. In short, GC Services contends that when it first requested a figure from Mahar's counsel for attorney's fees, she provided a figure that GC Services contends was hugely inflated and amounted to an attempt to extract more in fees than was actually incurred. These accusations stem from an email exchange following Mahar's acceptance of the offer of judgment. GC Services' counsel requested Mahar's attorney to "[p]lease let me know of taxable costs and your proposal for attorney's fees through today." Dkt. No. 9-1. In response, Mahar's counsel wrote: "Plaintiff's demand for attorneys fees and costs is $3,500. Let me know if that works or if you have a counter. Thanks!" *Id.* Despite having asked for a "proposal," GC Services' attorney chafed at the use of the term "demand" in the email, and replied that "I am not sure why you have sent me a 'demand.' The fee question is resolved by identifying the facts of how many hours you reasonably spent at a reasonable rate? We are not negotiating your proposal of what you desire for a fee." *Id.* He continues by stating that he finds the $3,500 demand hard to believe, he requests to see opposing

---

[3]The emails attached to the Response reflect that Mahar's counsel was unwilling to share billing records with GC Services during the negotiations on fees. Dkt. No. 9-1. It would probably have facilitated an agreement had Mahar's counsel taken a different position. She may ultimately have, given that the billing records submitted with the fee application suggest that there were several more conversations between the attorneys after the email discussion. Dkt. No. 7-5; entries for September 5-11, 2014. But if not, she too bears some responsibility for the lack of an agreement.

counsel's billing records, and finishes by stating the he believed opposing counsel would be well compensated at $750.  Mahar's counsel then replied that her firm's policy was not to provide billing records until a fee application is filed, and declined to provide them at that time.

A little over a week later, the present motion was filed, which includes all of Mahar's counsel's billing records.  GC Services' objection is based on its counsel's analysis of those records as compared to the $3,500 request.  GC Services contends that at the time the $3,500 proposal was made by Mahar, "Plaintiff's counsel's own records . . . show [that], at most, only $1,675 in recorded time for fees and costs" had been incurred, and speculates that "[p]erhaps Plaintiff's counsel's 'firm policy' is based upon an understanding that their billing records actually belie their 'demand' for attorney's fees." Dkt. No. 9 at 3.  GC Services has misunderstood or misread the billing statements. The statements demonstrate that as of September 2, 2014, immediately after the emails discussed above, Mahar's undiscounted fees and costs on the billing statement totaled $2,821.[4]  Further, Mahar's counsel states in the reply that the $3,500 figure was her estimate of "all fees and cost [*sic*] incurred and those to-be-incurred through settlement."   Dkt. No. 10 at 3.   As noted earlier, the undiscounted invoice of fees and costs totaled over $3,600 (albeit including the briefing work on fees that post-dated the discussions).  Further, it appears from the emails and their timing that the $3,500 figure was not based on an analysis of the billing records, but rather was a quick estimate.[5]  From the evidence before it, the Court finds GC Services' contention that Mahar's attorney misrepresented her fees and costs during the September email exchange to be unsupported by the record.

---

[4]*See* Dkt. No. 7-5.

[5]GC Services' request for a proposal was made midday on the Friday before Labor Day, and Mahar's response with the $3,500 figure was sent at 7:35 am on the Tuesday following that holiday.

Which brings the Court to its final thought—the tone and accusatory nature of GC Services' Response on the fees issue was unwarranted and inappropriate.  In its Response, GC Services uses a host of accusatory and pejorative terms to refer to Mahar's counsel.  In the eight-and-a-half pages of its response, GC Services uses all of the following phrases:

- "bad faith negotiations"
- hard to understand how counsel "could proceed so dishonestly in representations to opposing counsel only to be proven dishonest by her own records"
- "dubious of the suggestion that four attorneys actually worked on the matter"
- "Plaintiff clearly misrepresented the amount of fees incurred"
- "mendacious effort"
- "lack of candor"
- "arguab[le] misconduct"
- "unmitigated misrepresentations"
- "bad faith negotiations"

*See* Dkt. No. 9.  GC Services' counsel has apparently forgotten the dictates of the Texas Lawyer's Creed, particularly ¶ 10 of the Lawyer to Lawyer section:

> I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties, and witnesses.

TEXAS LAWYER'S CREED, reaffirmed by Texas Supreme Court and Texas Court of Criminal Appeals, March 2013 (published at 76 TEXAS BAR J. No. 5 at 435-36).  These sort of accusations, on such a thin record, do nothing but demean opposing counsel, and have little to do with the issue that is before the Court:  what amount should Mahar be awarded for the reasonable attorney's fees needed to bring suit against GC Services.

In fact, GC Services' attacks are all the more questionable when viewed in the light of the allegations made by Mahar here, and those made in numerous other suits filed against GC Services. As mentioned at the outset, Mahar contends that GC Services rather plainly violated federal law by

calling her twice a day for weeks on end, calling her employer and disclosing the alleged debt, and threatening to garnish her wages. Further, GC Services is no stranger to federal court. A quick review of the electronic filings in just this district alone reflects that GC Services has been sued for fair debt collection statutory violations in this district at least 13 times in just the past 10 years. Every single one of those cases was resolved immediately following an answer, either through a negotiated settlement or an offer of judgment.[6] GC Services' policy is clearly not to litigate these cases, but instead to allow a judgment to be entered against it, and to pay the statutory damages and fees quickly. If that is the approach GC Services has chosen to take when sued, it must take the bad with the good, and accept that it is liable for the reasonable attorney's fees plaintiffs incur when they bring such suits.

### III. Recommendation

The Court finds that the reasonable attorney's fees and costs that should be awarded to plaintiff in this case total $2,500. The undersigned therefore **RECOMMENDS** that Plaintiff Rebecca Mahar's Motion for Attorney's Fees and Costs (Dkt. N0. 7) be **GRANTED**, and that, consistent with the Offer of Judgment and Notice of Acceptance, the district judge enter **JUDGMENT** in favor of plaintiff Rebecca Mahar, and against defendant GC Services, L.P., in the amount of $1,000 in statutory penalties, and $2,500 for attorney's fees and costs.

### IV. Warning

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

---

[6]The one exception is Case No. 3:05-cv-398 FM, in the El Paso Division. In that case a default judgment (which included $4,400 in attorney's fees) was entered, and then set aside on GC Services' motion. The case settled immediately thereafter.

being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of April, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE